### WHITTLESEY (WOVEN WIRE MATTRESS CO. v.). See Case No. 18,058.

---

## Case No. 17,604.

### WHITTON et al. v. The COMMERCE.

[1 Pet. Adm. 160.] [1]

District Court, D. Pennsylvania. 1798.

SEAMEN'S WAGES—FORFEITURE.

The seamen had been absent from the ship forty-eight hours, and were entered in the log-book as deserters. They were received again on board, and on the return of the ship they claimed wages for the voyage. The court was of opinion that the mariners having been received on board again, the forfeiture of their wages was waived, and a decree was entered for the libellants.

[Cited in The Mentor, Case No. 9,427; The Philadelphia, Id. 11,084; The Nimrod, Id. 10,267; Sherwood v. McIntosh, Id. 12,778; Sculley v. The Great Republic, Id. 12,571.]

The brig Commerce had been on a long circuitous voyage of between two and three years. She touched at a foreign port, on her way home, where, on a difference with the master, the seamen went on shore, as it was alleged, without the master's leave. An entry, agreeably to the act of congress, was made in the log-book, of their having been absent without leave, for the space of forty-eight hours. The seamen denied the accuracy of this entry. A reconciliation took place at the foreign port, and the sailors were received, without any new agreement. They continued to perform their duty until the arrival of the brig at Philadelphia, where the voyage ended. A suit was commenced against the master and owner for the balance of wages for the voyage. The entry on the log-book before stated, was offered to repel their claim to all wages preceding thereto, which were said to be forfeited.

BY THE COURT. This is an attempt at severity, which the law will not justify. It is much to be desired that all our mercantile citizens better understood those principles of the maritime laws, which in courts of justice we are bound to follow. Crimes and offences of seamen are rigorously punished; but mariners, with all their too numerous faults, are considered by all maritime nations objects of national concern. Their contracts are placed under the cognizance of national courts, bound to proceed by fixed rules, and circumscribed by principles of law. Seamen are deemed the sin-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[1] [Reported by Richard Peters, Jr., Esq.]

ews, or more aptly·in our ships, called "the hands," of naval power, strength and security. Without the aid of this intrepid and hardy class·of men, under national government and direction, commerce might be annihilated. An extended sea coast, convenient for trade and·a source of wealth, would be subjected to invasion by foreign foes, and depredations by neighbouring freebooters; and so become a ruinous curse, instead of a public blessing. To say, that without commerce, the nation would have no seamen, is true; but it is as true, that without national protection, in which mariners bear a prominent part, there would be no commerce. The uses made of them in commerce, though of primary importance, are not exclusively regarded. They are encouraged and protected by all the maritime laws, for other and more extensive national purposes, as well as for those in which commercial individuals employ, and profit by, their services. Their frailties are by these laws forgiven; and their offences, so far as these affect contracts, are pardoned on repentance, compensation or offer of amends and return to their duty. Public policy and private justice, as it is fit they should, here move together.

In the case before me, it is unnecessary to enquire into any other fact, than that of the mariners having been again voluntarily received on board, by the master, after the alleged forfeiture. This fact is conceded: the master's thus having received the mariners on board, is a waiver and pardon of the forfeiture, had the fact, on which that forfeiture is said to have been incurred been ever so clearly established. It does not supercede the principle, and is immaterial, whether the forfeiture attached under a law of the United States,[2] or in virtue of the general principles of maritime law. Our law only declares when in particular enumerated circumstances forfeiture shall accrue; but it does not furnish any rule for the case now under consideration. This point has been repeatedly decided in this court, in a great number of instances. The decisions are supported by authorities ancient and modern. In the thirteenth article of the laws of Oleron, and twenty-fifth of

those of Wisbuy [Fed. Cas. Append.] [3] it will be seen that "the master may turn off a mariner for a lawful cause; but if the mariner compensates for his fault, and the master, nevertheless, refuses to admit him again, the mariner may follow the ship to her destined port, and he shall be paid his wages as much as if he had made the voyage in the same ship. If the master hires a less able seaman, and there happens any damage by it, the master is to make it good." By the law of Oleron (article 13 [Fed. Cas. Append.]) an "offer to make amends and return to duty" amounts to satisfaction.[4] Here is a stronger case than that before me. A mariner not simply absenting himself without cause, but turned off for a lawful cause, must be received again. From other authorities it appears that the mariner should "repent and make an offer of satisfaction and return to duty, in due time;" that is, before the master has hired another equally able seaman, in his place, or otherwise fairly rendered it impracticable without injury to the owner, to receive him again. And on this ground it has been contended, that where the fault has incurred actual forfeiture of wages, the master is not compellable, though he may consent to receive the mariner again. I think he is bound to receive the mariner, on the terms before stated. The consent and agreement to receive him, is the strongest evidence of satisfaction given, or not insisted on. This consent and agreement to continue his services, is in contemplation of law, a complete waiver and forgiveness of all offences and faults which would have in-

---

[2] The amount of the forfeiture of wages, has been disputed: and endeavoured to be confined to the wages due from the last port of delivery precedent to the desertion, under the idea that the right to them was vested, and not affected by the subsequent misconduct. But the words of the 5th section of the mariner's act, seems to be too comprehensive for this limitation, "he shall forfeit all the wages due to him." The wages for the section of the voyage unfinished, are not due until it is completed, though payments pro rata are often decreed, when casualties prevent the seaman from fulfilling his contract, or the master by voluntary discharge, or dismission for lawful cause, warrants a discretionary construction, by interrupting the progress of the agreement. If seamen commit faults so gross, they subject themselves, by their own acts, to all consequences.

[3] The laws of Wisbuy were as famous in, and influential over, all the northern maritime countries of Europe, as were those of Rhodes, the Consolato del Mare, or Roll of Oleron, in the scenes of their respective operations. These laws are ancient, but posterior to those of Oleron. though the commerce of the northern nations who adopted them was extensive, and their hardy enterprizes celebrated long before their promulgation. The Swedes were famed for nautical skill, and superiority in the construction of their ships. in the time of the Romans. Wisbuy was a city in Gothland, in the Swedish dominions, once a mart the most flourishing in Europe; it is now a ruinous monument of abject and deplorable decay. Its laws yet remain in extensive credit and operation, thus long after its commercial importance is blotted out. It affords another lesson of humility, written for the instruction, and monitory to the cupidity and pride, of man.

[4] See note in the case of a ship's steward. In certain cases no amends can be made; and an unqualified rejection of the mariner, liable to no obligation to receive him again, has been held legal. In all the cases (and I have had many) of seamen discharged in foreign ports for lawful causes I have enjoined on the masters (as directory to their future conduct) the necessity of payment to the time of discharge; to enable the seamen to subsist, and return home. Since the law of the United States expressly directing masters to bring home every member of their crew (in a capacity to return). I have without examination, left this law to its own operation; never having had a judicial opportunity of giving any opinion upon it.

terrupted or destroyed the contract. But all demands for damages and contributions for losses, which warrant deductions from amount of wages, are unextinguished. Embezzlement, frauds, wilful negligences, and other misconduct, chargeable against the quantum demanded, remain open for enquiry and compensation.

The balance of wages, for the voyage, was decreed, after allowing all legal deductions.